IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| JASON C. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:26-cv-107 |
| | ) | |
| VICTOR GHEORGHE PREDA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **COMPLAINT**
(Jury Trial Demanded)

NOW COMES the Plaintiff, complaining of the Defendant, and alleges and says as follows:

1.

That jurisdiction is based upon diversity of citizenship among Plaintiff and Defendant named herein. 28 U.S.C. §1332.

2.

That the amount in controversy, exclusive of interest and costs, exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00). 28 U.S.C. §1332.

3.

That the acts alleged by the Plaintiff in this action occurred in Macon County, North Carolina, within the Western District of the State of North Carolina. Accordingly, venue properly lies pursuant to 28 U.S.C. §1391.

4.

That the Plaintiff is a citizen and resident of DeKalb County, Georgia.

5.

That upon information and belief, Defendant Victor Gheorghe Preda (hereinafter "Preda") is a citizen and resident of Macon County, North Carolina.

6.

This action was previously filed in the General Court of Justice, Superior Court Division, Macon County, North Carolina, under File No. 25CV000215-550. Plaintiff voluntarily dismissed that action without prejudice pursuant to N.C. R. Civ. P. 41(a) in order to refile in this Court.

7.

On Saturday, February 1, 2025, King was walking his dog on a leash near the end of a dead-end public street in the Town of Highlands, Macon County, North

Carolina. King has family with a second home in Highlands and was visiting for a long weekend.

8.

Preda was sitting in a parked car at the end of the street. Preda does not reside in the immediate area of the street. He had driven there and parked to allow his three dogs to run around unleashed and unsupervised.

9.

As King approached, Preda's three unleashed dogs surrounded King and his leashed dog. One of Preda's dogs began growling aggressively. King immediately turned to go back the other way, but the dogs would not clear away and remained circled around King and his dog.

10.

King shouted to Preda, who was seated in his vehicle approximately fifteen to twenty yards away, to get control of his dogs.

11.

Preda then exited his vehicle and slowly approached King, mumbling words to the effect of "you think you are one of those tough guys."

12.

Without further provocation or warning, Preda calmly and casually stabbed King in the upper-left chest with a knife he had been concealing in his hand. King had never met or encountered Preda before in his life.

13.

After stabbing King, Preda attempted to grab King by his jacket. King shouted for Preda to get his hands off him and shoved Preda away. Preda fell to the ground, breaking his hip, and was unable to get up.

14.

Preda began screaming for help. Despite the severity of his wound, King got away from Preda and called 911.

15.

At the scene, Preda had the presence of mind to attempt to dispose of the knife. Law enforcement recovered the weapon days later in the nearby woods using a metal detector.

16.

When officers attempted to arrest Preda at the scene, Preda resisted arrest by refusing to place his hands behind his back when ordered to do so by Captain Jeffrey Jolly of the Highlands Police Department.

17.

The stab wound lacerated King's left lung, causing it to collapse (pneumothorax). The knife missed King's heart by approximately one inch.

18.

King was initially treated at Highlands-Cashiers Hospital Emergency Room, where a chest tube was inserted, CT imaging of the thorax, abdomen, and pelvis was performed, and he was stabilized for transport.

19.

King was transported by helicopter (Mission Health MAMA) to Mission Hospital in Asheville, North Carolina, a Level II trauma center.

20.

In the early morning hours of February 2, 2025, King underwent emergency thoracoscopic surgery to reinflate his collapsed lung and to inspect his diaphragm

and pericardium for damage. The surgeon confirmed the knife had missed King's heart by approximately one inch.

21.

King remained hospitalized in the ICU and recovery ward at Mission Hospital until he was discharged on the evening of Wednesday, February 5, 2025—a total of four days of inpatient hospitalization.

22.

King  has other special damages including his wife's hotel and meals during his hospitalization, replacement of clothing destroyed in the attack, lost wages and income, and the purchase and installation of security cameras at their home.

23.

Upon information and belief, Preda has previously engaged in threatening and violent behavior toward his neighbors in Highlands, including threatening a neighbor's wife with a gardening tool and blocking access to a road.

24.

That the incident described above directly and proximately caused personal injuries, including but not limited to, severe and permanent injuries, past, present, and future medical expenses, and economic loss to the Plaintiff.

**FIRST CLAIM FOR RELIEF**
**BATTERY**

The allegations contained in Paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

25.

Preda's stabbing of King and subsequent grabbing of King's jacket constituted an intentional infliction of harmful and offensive contact upon King's person.

26.

King did not consent to Preda's conduct.

27.

Defendant's actions constitute a willful and wanton disregard for the safety of the Plaintiff, and the acts described above proximately caused the Plaintiff's injuries.

28.

That the intentional conduct of the Defendant as described above was a direct and proximate cause of the Plaintiff's personal injuries, including severe and permanent injuries, loss of income and earning capacity, permanent injury and other damages allowed by law, and therefore Plaintiff is entitled to recover damages in an amount exceeding $75,000.00.

## SECOND CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

The allegations contained in Paragraphs 1 through 28 are re-alleged and incorporated herein by reference.

29.

Preda's conduct—approaching a stranger on a public street, making threatening statements, and without provocation stabbing him in the chest with a concealed knife in a manner that nearly killed him—was extreme and outrageous and exceeded all bounds usually tolerated by decent society.

30.

Preda's conduct was intended to cause, and did in fact cause, King to suffer severe emotional distress, including anxiety, fear for his life and the safety of his family, and emotional trauma that continues to this day.

31.

As a direct and proximate result of Preda's extreme and outrageous conduct, King has suffered and continues to suffer severe emotional distress, for which Preda is liable.

32.

Defendant's actions constitute were willful and were a wanton disregard for the safety of the Plaintiff, and the acts described above proximately caused the Plaintiff's injuries.

33.

That the conduct of the Defendant as described above was a direct and proximate cause of the Plaintiff's personal injuries, including severe and permanent injuries, loss of income and earning capacity, permanent injury and other damages allowed by law, and therefore Plaintiff is entitled to recover damages in an amount exceeding $75,000.00.

## THIRD CLAIM FOR RELIEF
## PUNITIVE DAMAGES

The allegations contained in Paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

34.

Preda's conduct was willful, wanton, and malicious and in reckless disregard of the rights and safety of the Plaintiff. Preda acted with actual malice when he deliberately armed himself with a concealed knife and, without provocation, stabbed a stranger in the chest in an attack that nearly proved fatal.

35.

Preda's conduct was aggravated by: (a) his prior conviction for Assault with a Deadly Weapon, demonstrating that court intervention and anger management counseling had failed to deter his violent behavior; (b) his deliberate attempt to dispose of the weapon after the stabbing; (c) his resistance of arrest; and (d) his long and well-documented history of violent and aggressive conduct toward others.

36.

Preda's conduct constitutes the type of outrageous and aggravated behavior that the punitive damages statute is designed to punish and deter and to make an example of the Defendant.

37.

Plaintiff is entitled to an award of punitive damages against Preda in an amount sufficient to punish him and deter similar conduct in the future, to be determined by the common sense of a fair and impartial jury pursuant to N.C. Gen. Stat. Chapter 1D.

WHEREFORE, the Plaintiff prays for a judgment against the Defendant as follows:

1. That the Plaintiff have and recover of the Defendant in an amount in excess of $75,000.00 pursuant to the First Claim for Relief.

2. That the Plaintiff have and recover of the Defendant in an amount in excess of $75,000.00 pursuant to the Second Claim for Relief.

3. That the Plaintiff have and recover of the Defendant punitive damages in an amount to be decided by a jury.

4. That the Defendant be ordered to pay the costs of this action.

5. For a trial by jury.

6. For such other and further relief as the Court deems just and proper.

This the 14th day of April 2026.

s/Mark R. Melrose
NC State Bar No.: 17175
Adam R. Melrose
NC State Bar No.: 50873
Attorneys for Plaintiff
Melrose Law, PLLC
Post Office Box 567
Waynesville, North Carolina 28786
(828) 452-3141 Telephone
(828) 246-6221 Facsimile
melrose@mountainverdict.com
adam@mountainverdict.com